**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**MEDICAL LIABILITY MUTUAL
INSURANCE COMPANY**                                                                   **PLAINTIFF**

**CASE NO. 4:05-CV-01317 GTE**

**ALAN CURTIS ENTERPRISES, INC.;
EVERGREENE PROPERTIES OF NORTH
CAROLINA, L.L.C., d/b/a CRESTPARK
RETIREMENT INN-HELENA; CAP CARE
OF ARKANSAS, INC.**                                                                   **DEFENDANTS**

**<u>MEMORANDUM OPINION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

Before the Court are cross-Motions for Summary Judgment.  Defendants Alan Curtis

Enterprises, Inc., Evergreene Properties of North Carolina, LLC, and Cap Care of Arkansas have

filed a Motion for Summary Judgment.  Plaintiff Medical Liability Insurance Company's

("MLMIC") has filed a Motion for Partial Summary Judgment.  The motions have been fully

briefed.   The parties have also filed Trial Briefs further outlining their respective theories in

anticipation of trial.  After considering the entire summary judgment record, the Court grants

MLMIC's motion solely as it relates to the allegation that there is no possibility of coverage (*i.e.*,

no duty to indemnify) the Defendants on the tort related claims.  The Court grants the

Defendant's motion solely in connection with the allegations regarding whether MLMIC has  a

duty to defend Curtis Enterprises.

## FACTS WITHOUT MATERIAL CONTROVERSY

In its Complaint, Plaintiff Medical Liability Mutual Insurance Company ("MLMIC")

seeks a declaratory judgment regarding its obligations as an insurer to its named insureds

Defendants Evergreene Properties of North Carolina, L.L.C.  ("Evergreene") and Cap Care of

Arkansas, Inc. ("Cap Care"), as well as to Alan Curtis Enterprises ("Curtis Enterprises").

Evergreene operates, maintains, and manages a nursing home in Helena, Arkansas known

as Crestpark Retirement Inn – Helena ("Crestpark").  Cap Care owns the real estate associated

with Crestpark, which it leases to Evergreene pursuant to a written agreement.  Curtis

Enterprises, pursuant to a Management Agreement dated October 1, 1998, and amended February

1, 2002, provides certain on-site management and operational services at Crestpark for the

benefit of Evergreene.

Evergreene, Cap Care and Curtis Enterprises were all named as defendants in a state court

action based on allegations that they failed to provide adequate care and treatment for Baker Paul

Williams during his residency at Crestpark.  The lawsuit was filed in Phillips County Circuit

Court on January 28, 2005 (hereinafter referred to as the "Underlying Lawsuit").[1]  The

Underlying Lawsuit asserts causes of action against Evergreene, Cap Care, and Curtis Enterprises

for negligence; violations of the Arkansas Resident's Rights Statute, Ark. Code Ann. § 20-10-

1201 et seq.; breach of contract;  negligence and wrongful death under the Arkansas Medical

---

[1]  The Underlying Lawsuit is styled *Phyllis Patterson, as Administratrix of the Estate of Baker Paul Williams, deceased, and on behalf of the wrongful death beneficiaries of the Estate of Baker Paul Williams v. Evergreene Properties of North Carolina, L.L.C. d/b/a Crestpark Retirement Inn-Helena; Cap Care of Arkansas, Inc.; Phillips Hospital Corporation d/b/a Helena Regional Medical Center; and Alan Curtis Enterprises, Inc.*, Phillips County Circuit Court, No. CV-2005-43.  In addition to the three defendants in this action, the Underlying Lawsuit also names Phillips Hospital Corporation d/b/a Helena Regional Medical Center.

Malpractice Act.

After notice and demand for coverage by Evergreene, MLMIC agreed to provide a defense to Evergreene, Cap Care, and Curtis Enterprises in the Underlying Lawsuit under a reservation of rights.

MLMIC contends in its Complaint that both Policies are occurrence basis policies, providing coverage only for occurrences between January 15, 2000 and January 15, 2001. MLMIC further contends that because the statute of limitations applicable to the various claims asserted in the Underlying Lawsuit establish that none of the compensable injuries occurred within the policies' occurrence period, that they are entitled to a declaratory judgment that there is no coverage under the policies at issue.  MLMIC seeks a determination that it is entitled to reimbursement for the costs of defense, attorneys' fees, and any other costs expended for the defense of claims in the Underlying Lawsuit for which there is no coverage.  MLMIC also seeks a determination that there is no coverage under the Polices for intentional misconduct or punitive damages.   Finally, MLMIC seeks a determination that it has no duty to defend or to indemnify Alan Curtis Enterprises, Inc., or Cap Care in connection with the Underlying Lawsuit.

**The Policies**

Two policies are at issue in this case: (1) a Healthcare Facility Liability Insurance Policy, Policy HPC 2938113 (the "Primary Policy") issued by Firemen's Fund Insurance Company of Ohio and later acquired by MLMIC; and (2)  a Supercover Umbrella and Excess Liability Policy, Policy HXC 2938114 (the "Supercover Policy") issued by Firemen's Fund Insurance Company of Ohio and later acquired by MLMIC (referred to collectively as "the Policies")(Copies of the Policies are attached as Exhibits 1 and 2  to Alan Curtis' motion and as Exhibits C and D to

MLMIC's motion).[2]

Defendants Evergreene and Cap Care are the only named insureds under the Primary Policy.  (Exh. C, Bates Nos. 10109, 10111).  Evergreene is the only named insured under the Supercover Policy.  (Exh. D, Bates No. 10169).

**SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554-55, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the Court must view all facts and inferences from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986).  The party moving for summary judgment must establish both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co.,* 475 U.S. at 586-90, 106 S.Ct. 1348.

"Under Arkansas law, construction of an unambiguous insurance policy is a question of law for the court."  *Arkansas Power and Light Company v. Hartford Steam Boiler Inspection and Insurance Co.*, 257 F.3d 853 (8th Cir. 2001); *see also State Automobile Ins. Co. v. Lawrence*, 358 F.3d 982 (8th Cir. 2004).

**DISCUSSION**

The cross-motions for summary judgment raise various issues regarding the Policies and

---

[2]  Unless otherwise stated, the Court's references herein to the Policies are to the copies attached to Alan Curtis' motion, which are Bates stamped 00001-00029.

MLMIC's duties thereunder in connection with the Underlying Lawsuit.

MLMIC seeks summary judgment on five issues in the form of a declaration that:  (1) it has no duty to indemnify the Defendants in connection with the claims of negligence, violations of the Arkansas long-term resident's rights act, and medical malpractice or wrongful death based on medical malpractice;  (2) that it is entitled to recover its attorneys' fees and costs expended in the defense, in the Underlying Lawsuit, of claims for which there is no coverage;  (3) that it has no obligation to defend or indemnify Alan Curtis Enterprises, Inc., because it is not a named insured;  (4) that it has no obligation to indemnify the Defendants for intentional or willful conduct that could give rise to punitive damages; and (5) that it is entitled to recover from Curtis Enterprises one-third of the attorneys' fees and costs expended for the defense of claims in the Underlying Lawsuit.

The Defendants' motion for summary judgment is based on their contention that they are entitled to a defense and to indemnity for each and every claim asserted in the Underlying Lawsuit.

MLMIC is not seeking any relief in connection with the breach of contract claim asserted in the Underlying Lawsuit.  The Court understands that MLMIC acknowledges that it is obligated to provide a defense as to that claim and continues to do so.

On September 29, 2005, Cap Care prevailed on its summary judgment motion filed in the state court proceeding and was dismissed from the Underlying Lawsuit.  Cap Care is no longer a party to the Underlying Lawsuit.  Accordingly, MLMIC no longer has to provide any defense for Cap Care.  It further appears doubtful that any possibility of coverage under the Polices exists with regard to Cap Care.  The Court recognizes that the issue of whether MLMIC will be

- 5 -

permitted to recover from Cap Care the costs of the defense previously provided in the Underlying Litigation is not moot.  The Court will therefore address that sole issue as to Cap Care.  With the resolution of that issue, the Court questions whether Cap Care should remain a party Defendant in this action.  The Court requests that MLMIC either dismiss Cap Care as a Defendant or explain why such dismissal is not appropriate.

The legal issues are addressed separately below.

### (1)    Claims Governed by Two or Three Year Statutes of Limitation are time barred and cannot give rise to covered "Occurrences"

Mr. Williams died on August 23, 2003.  The stated policy period under both the Primary and Excess Policies was from January 15, 2000 through January 15, 2001.  The Underlying Lawsuit was filed on January 28, 2005.  Because the statute of limitations applicable to all the tort based claims[3] is either two or three years, MLMIC contends that any occurrence giving rise to damages for such claims could not have occurred within the applicable coverage period.  Conversely, Defendants contend that there remains a possibility of coverage based on the fact that the Complaint in the Underlying Lawsuit alleges a continuing course of treatment, continuing duties and recurrent negligence.

The Primary Policy provides coverage for "Occurrences" within the policy period as opposed to "Claims-Made" during the policy period.  "Occurrence" is defined under the Policy as follows:

---

[3]  The Underlying Lawsuit contains causes of action for negligence, medical malpractice, wrongful death, and Arkansas' long-term care statute, which also sounds in tort.  MLMIC discusses in detail why the applicable statute of limitations as to all these actions is either three or two years.  (See MLMIC's brief in support of summary judgment at pp. 6-12).  For the reasons well stated by MLMIC, and uncontroverted by Defendants, the Court agrees.

Occurrence coverage covers claims arising form [sic] incidents that occur while the policy is in force, regardless of when the actual claim is reported and whether the insured still maintains the policy.

(Policy, Exh. 1 at Bates No. 00005).

The Primary Policy further provides, as to the Professional Liability Coverage, that it will pay damages and defend only when: "the providing or failure to provide professional services occures [sic] during the policy period."  (Policy, Exh. 1 at Bates No. 00004).

The Supercover Policy, like the Primary Policy, provides for a period of coverage from January 15, 2000 to January 15, 2001.  (S.Policy, Exh. 2 at Bates No. 00019).  Coverage under the Supercover Policy also applies on an occurrence basis.  (S.Policy, Exh. 2 at Bates No. 00019).

The Supercover Policy provides for two distinct types of Coverage: (1) Coverage A or Excess Liability; and (2) Coverage B or Umbrella Liability.  Coverage A applies to injury or damage covered under the Primary Policy and adopts the definitions, terms, conditions, limitations, and exclusions of the Primary Policy.  It is intended to pay "sums in excess of the Primary Insurance that the insured becomes legally obligated to pay as damages."  (Exh. 2 at Bates no. 00019).  Coverage B provides that the insured "will pay on behalf of the insured those sums that the insured becomes obligated to pay as damages for liability imposed on the insured by law or assumed under an insured Contract because of Personal Injury or Property Damage."  (Pl.'s Exh. D at Bates No. 10187).[4]

Defendants contend that the claims in this case fall under the Super Policy's Coverage A,

---

[4] The Court cites to the Plaintiff's copy of the Policy because the Defendant's copy is missing a portion of text at the bottom of the page.

consistent with their assertion that coverage exists under the Primary Policy.  Coverage B specifically provides that it "shall not apply to any claim or Suit" for which insurance is provided by Primary Insurance.  (Exh. 2 at Bates no. 20).

MLMIC discusses Coverage B intermittently, primarily in connection with Coverage B's exclusion for punitive damages, an exclusion which is conspicuously absent from Coverage A.  MLMIC makes no effort to discuss how Coverage B might be triggered on these facts. Defendants contend that Coverage B is inapplicable to the issues involved in the Underlying Lawsuit.  In the absence of any briefing to show how coverage under this provision might be triggered, the Court at this time declines to make any declaratory judgment rulings in connection with Coverage B of the Supercover Policy.

Coverage A of the Supercover Policy provides that "[i]f a Primary Policy applies on the basis of injury or damage which occurs during the period of that policy, then this coverage shall apply on the same basis and in a like manner, provided, however, that this coverage shall only apply to injury or damage which occurs during Our Policy Period.  (Ex D to MSJ, Bates 10187). In Section I, entitled "Coverages, " Coverage A adopts the same limitations as those provided under the Primary Policy.  Accordingly, if coverage is found to be lacking under the Primary Policy, then it is also lacking under Coverage A of the Supercover Policy.

MLMIC contends that all claims pending in the Underlying Lawsuit, other than the breach of contract claim, are governed by either a two or three year statute of limitations. Defendants do not dispute the applicable limitations periods, but instead argue that a possibility of coverage exists because the Complaint in the Underlying Lawsuit alleges a continuing course of treatment, continuing duties and recurrent negligence.  Defendants' argument is a tacit

admission that without tolling the limitations period for the tort related claims, there can be no

recovery of damages for wrongdoing occurring in the relevant coverage period and therefore no

possibility of coverage under the Primary Policy.

Contrary to Defendants' assertion, the Complaint in the Underlying Lawsuit contains no

assertions that would merit tolling the applicable limitations period such that recovery could be

had for any occurrences within the applicable period under the Primary and Supercover Policies.

While the Complaint makes generalized assertions that Mr. Williams suffered "recurrent

negligence," the Complaint contains no factual allegations that would merit tolling the applicable

limitations period.  (Complaint, Exh. A to Pl.'s motion at ¶ 15).

While the Arkansas Supreme Court has consistently rejected a continuing tort theory, it

has recognized a continuous treatment theory.  *Lane v. Lane*, 295 Ark. 671, 674, 752 S.W.2d 25,

27 (1988).   It has defined the "continuous treatment" theory as follows:

> If the treatment by the doctor is a continuing course and the
> patient's illness, injury or condition is of such a nature as to impose
> on the doctor a duty of continuing treatment and care, the statute
> does not commence running until treatment by the doctor for the
> particular disease or condition involved has terminated unless
> during treatment the patient learns or should learn of the
> negligence, in which case the statute runs from the time of
> discovery, actual or constructive.

*Id.*, at 673-74, 752 S.W.2d at 26-27.   The doctrine "becomes relevant when the medical

negligence consists of a series of negligent acts, or a continuing course of improper treatment."

*Id*., at 675, 752 S.W.2d at 25.  Nor does the doctrine apply because "the effect of the wrong" is

continuous.  *Id*. at 674, 752 S.W.2d at 27.

The doctrine is "inapplicable to cases involving single or isolated acts of negligence."

*Raynor v. Kyser*, 338 Ark. 366, 371, 993 S.W.2d 913, 915-16 (1999).   Instead, application of the doctrine requires that the patient have received "active, ongoing medical care and attention beyond the time of a specific negligent act or series of acts – that is, something more than the mere continuation of the physician-patient relationship." *Id*. at 372.

The manner in which the Arkansas courts have applied the doctrine suggests that it is rarely applicable.  *See, e.g., Baker v. Radiology Assocs.*, P.A. 72 Ark. App. 193, 35 S.W.3d 354 (2000)(each allegedly misread mammogram was a separate act).   Additionally, the continuous treatment doctrine has never been applied outside the context of a physician-patient relationship. Application of the doctrine has been specifically rejected in the context of other types of malpractice.  *F.D.I.C. v. Deloitte & Touche*, 834 F.Supp. 1129, 1148 (E.D. Ark. 1992)(accounting malpractice).   Thus, for the doctrine to be applicable as to Evergreene and Curtis Enterprises, the doctrine would have to be expanded to the nursing home-client relationship.   The Court predicts that Arkansas courts would refuse to do so, but need not decide that issue because the Complaint in the Underlying Lawsuit fails to allege sufficient facts to justify application of the continuous treatment doctrine.

There are no allegations in the Complaint to suggest anything other than that Mr. Williams had a continuing relationship with Evergreene and Curtis Enterprises during the tenure of his stay at that nursing home and that while there he received inadequate and negligent care. The Complaint alleges that Mr. Williams suffered the following injuries: (a) ankle fracture; (b) sepsis; (c) pressure ulcers; (d) dehydration; (e) aspiration pneumonia; and (f) death.  *Id*.   The Complaint makes no attempt to state when such injuries occurred or to pinpoint such injuries to a particular negligent act.   Instead, the Complaint adopts a shotgun approach.   For example, the

Crestpark Defendants (Evergreene and Curtis Enterprises) are alleged to have failed to ensure that Mr. Williams "attained and maintained his highest level of physical, mental, and psychosocial well-being" or that he "received adequate and proper nutrition, fluids, therapeutic diet, medications and skin care." (*Id*. at ¶ 25).

While Mr. Williams may be said to have received "continuing care" while at Crestpark, there is no allegation that he was treated for a specific injury or illness in a manner that would justify application of the continuing treatment doctrine. "The mere possibility of continuous treatment, which can be imagined but which has not been alleged, is not enough." *F.D.I.C. v. Deloitte & Touche*, supra, 834 F.Supp. at 1151.

Under Defendants' theory, any nursing home resident could contend that his or her entire nursing home stay constituted continuous treatment. This Court rejects such a theory and holds that it is not a proper application of the continuous treatment doctrine. The Court therefore concludes that no possibility of coverage exists under the Policies for the tort related claims asserted in the Underlying Lawsuit. MLMIC is entitled to judgment as a matter of law on this point.

**(2)    Is Alan Curtis Enterprise entitled to either a defense or indemnity**

It is undisputed that Defendant Alan Curtis Enterprises is not a named insured under either the Primary or Supercover Policy.  Based on that fact, MLMIC contends that it owes no duty to defend or provide coverage to Curtis Enterprises.[5]  Conversely, Curtis Enterprises contends that MLMIC agreed to pay those sums legally required to be paid as damages, including

---

[5]  Despite this assertion, MLMIC apparently does not dispute its obligation to provide a defense to Curtis Enterprises in connection with the breach of contract claim.

damages assumed under contract, because of injury resulting from the providing or failure to

provide professional services by agents.  (Policy, Exh. 1, at Bates No. 00021).  Curtis Enterprises

also relies on the "Management Agreement" between Evergreene Properties and Curtis

Enterprises, contending that it  unequivocally establishes that Curtis Enterprises is Evergreene's

agent, for whom coverage is provided under the Policy.

The duties of both Evergreene and Curtis Enterprises are spelled out in a Management

Agreement (hereinafter "Agreement").  That Agreement identifies Evergreene as the "Lessee"

and Curtis Enterprises as the "Lessee's Agent."  (Management Agreement, Exh. 3 to Defs'

motion).  The Management Agreement provides that Curtis Enterprises, for a specified annual

fee, will provide "on-site management and supervisory services."  The agreement specifically

defines the relationship of the parties as follows:

> **Relationship of Parties**.  It is understood and agreed that each of
> the parties hereto shall be considered that of principal and agent,
> and all acts performed by Lessee's Agent during the term hereof
> shall be those of agent of the Lessee [sic] shall be deemed
> performed in its capacity as agent. [sic]  To that end, Lessee agrees
> to honor as its own all commitments or agreements made by
> Lessee's Agent in the operation of the facilities, and Lessee agrees
> to indemnify and hold Lessee's Agent harmless from all loss, cost,
> expense, claims, actions, causes of action and judgments arising
> out of or incident to Lessee's Agent's performance of duties
> relating to the operation of the facilities, except those arising out of
> negligence or willful misconduct of Lessee's Agent.

(*Id*. at p. 3).[6]

There is no language in the Management Agreement requiring Evergreene to name Curtis

Enterprises as an additional insured.  Such provisions are common when parties specifically

---

[6]  The provision appears to have some extra verbiage, but its intent is clear.

agree that one party will rely on the insurance of another.

However, Evergreene by contract agreed to indemnify Curtis Enterprises for any actions taken on Evergreene's behalf and giving rise to loss or liability to Curtis Enterprises. Specifically excluded from the indemnity provision, however, is any responsibility for Curtis Enterprise's negligence or intentional torts.  Thus, it appears that Evergreene assumed by contract responsibility for any of Curtis Enterprises' actions, taken on Evergreene's behalf, which may result in the imposition of liability for breach of contract in the Underlying Lawsuit, but it has no responsibility to indemnify Curtis Enterprises for its tortious acts.  This assumption of liability has other potential consequences under the Policies, consequences which are discussed in greater detail below.

Whether Evergreene has assumed by contract responsibility for certain of Curtis Enterprises' actions is a separate and distinct issue from whether Curtis Enterprises has a right to coverage under the Policy.  Independently of the Management Agreement between Evergreene and Curtis Enterprises, there must be language in the Policy to justify imposing upon MLMIC  a direct duty to indemnify or defend Curtis Enterprises.

The Primary Policy limits the insurer's duty to pay or defend to "you and others covered under this policy."  (Policy, Exh. 1 at Bates 00015).  Although Curtis Enterprises is not named as an insured or an additional insured, it attempts to bring itself within the "others covered" policy provisions.

The Policy discusses in two separate provisions whom the policy covers.  The following provision appears in the Policy's Common Coverage Provisions:

**5.      WHO IS PROTECTED UNDER THIS POLICY**
The following persons and organizations are protected under all
sections of this policy.  Each is covered separately.  However, the
limits of coverage are shared by all insured.
. . .
●  **Corporation or other organization**.  If you are a
corporation or some other type of organization you are an insured.
Your executive officers, directors, trustees and governors are
insureds.  But each is insured only while acting within the course
and scope of their duties to you. Your stockholders are also
insureds, but only with respect to their liability as stockholders.
. . .
Persons other than those shown above may be covered under some
section of this policy but not in all sections.  Refer to the specific
coverage section for a description of these other insureds.

(Policy, Exh. 1 at Bates no. 00017).

The Primary Policy's provisions for Professional Liability expand on the coverage

definitions as follows:

**D.      OTHERS WHO ARE PROTECTED UNDER THIS
SECTION**

Under this section the following are included as insureds. . . .

1.  **Administrators**.  The following are insureds while
acting within the course and scope of their administrative
duties for you: your chief executive officer, your
superintendent;  your administrators; and your department
heads (including the head of the medical staff) and medical
staff members.
. . .
2.  **Committee or Board Members**.  Members of your
boards or committees are insured for claims that result
directly from their duties as members.  Those who carry out
the orders of such committees or boards are insureds while
in the course of executing the orders. . . .

3.  **Medical Staff**.  Members of your medical staff are
insureds.  But each is an insured only while acting within
the course and scope of their duties to supervise, teach or

proctor others at your request or as an obligation of medical staff membership.

4. **Workers**.  Your employees, students, and authorized volunteers, past or present, are insured while acting within the course and scope of their duties.

But, none of your certified healthcare professionals are insureds, even if they are your employees, students, or authorized volunteers.  But, this does not apply to those persons who are covered under D.2, D.3 and D.5 of this section.

5. **Physicians and Other Certified Healthcare Professionals**.  Any of your certified healthcare professionals who are shown in the Declarations are insureds.  The authorized and appointed locum tenens of any such person is also an insured, but only while acting within the course and scope of their duties.

(Policy, Exh. 1 at Bates no. 00021-22).

MLMIC contends that Curtis Enterprises does not fall within any of the defined categories of "other insureds."  MLMIC argues that the Primary Policy indicates an intent to define insureds by referring to groups of individuals who work directly for the named insured.

The Court can not agree that the "other insured" provisions are as limited as MLMIC suggests, but it also can not determine that such provisions clearly evidence an intent to bring Curtis Enterprises within the umbrella of "other insureds."  While such provisions evidence a specific intent to cover employees and volunteers, the provisions do not expressly and clearly exclude all entities or persons who perform specified duties as an independent contractor rather than an employee.  For example, the Policy's "Administrators" section speaks in terms of specific roles and job titles: "Chief Executive Officer," "superintendents" and "administrators."  The provision does not require that the person performing such duties be employed by

Evergreene.  Nor does the provision limit such coverage that would otherwise be provided solely because the person acting in such a role is doing so as an independent contractor.   The Primary Policy's focus on function without mentioning employment status creates an ambiguity, at best.

Any ambiguities in an insurance policy are construed liberally in favor of the insured. *Lewis v. Mid-Century Insurance Company*, 362 Ark. 591 (2005).   "Policy language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation."  *Id.* (omitting citation).

It was certainly foreseeable that Evergreene would contract with someone to perform the job duties of an administrator or superintendent.  To the extent that Curtis Enterprises (or a particular employee or agent of Curtis Enterprises) performs the job duties or acts in the role of "administrator" (or another role for which "other insured" coverage is specified) on Evergreene's behalf and the performance of such duties give rise to damages on the breach of contract claim in the Underlying Lawsuit, then  arguably the person performing such job duties should be considered an "other insured" whether or not the person was employed by Evergreene or, on the other hand, was acting on Evergreene's behalf as an employee or agent of Curtis Enterprises. The Court can not determine on this record that Curtis Enterprise was not performing job duties or acting in a role that would qualify it as an "other insured."

The Court recognizes that professional liability coverage exists solely to the extent that Curtis Enterprises may be said to have been providing or failing to provide professional services on Evergreene's behalf.  The Court specifically rejects the extremely narrow reading of "professional services" advocated by MLMIC in its brief opposing summary judgment.[7]  Based

---

[7]  (MLMIC Brief, Docket No. 49, at p. 9).

on the allegations of the Complaint in the Underlying Lawsuit and Curtis Enterprises' role as described in the Management Agreement, the Court concludes that a possibility exists that liability may be imposed against Curtis Enterprises on the breach of contract claim under circumstances that would trigger "other insured" coverage under the Primary Policy.

Independently of whether Curtis Enterprises is an "other insured", there is a separate reason that MLMIC might ultimately be called upon to indemnify Evergreene for any damages assessed against Curtis Enterprises on the pending breach of contract claim.  As the Court has already noted, the Management Agreement between Evergreene and Curtis Enterprises obligates Evergreene to indemnify Curtis Enterprises for any "loss, cost, expense, claims, actions, causes of action and judgments arising out of or incident to [Curtis Enterprises} performance of duties relating to the operation of the facilities."  (Management Agreement,, Exh. 3 to Defs' motion, at p. 3).

The Primary Policy contemplates the payment of damages assumed under contract.  It provides:

> **A.     WHAT WE WILL PAY AND DEFEND UNDER THIS SECTION**
>
> We will pay those sums which you and other persons covered under this section are legally required to pay as damages, <u>including damages assumed under contract</u>, because of injury that results from the providing or failure to provide professional services:
>
> - by you or any other insured; or
> - by employees or agents for whose acts your are legally responsible.
>
> We will also provide, in addition to your limits of coverage, a defense for claims alleging such injury.

(Policy, Exh. 1, at Bates No. 00021)(emphasis added).

Based on the Court's earlier rulings, only one claim – the breach of contract claim – remains in the Underlying Lawsuit for which there is potential coverage.  In the event there is a judgment against Curtis Enterprises for breach of contract, then Evergreene arguably agreed to indemnify Curtis Enterprises for such damages.  Assuming such damages are covered under the Policies (an issue that is not presently before this Court), then MLMIC could conceivably be responsible to pay such damages assessed against Evergreene as well as any damages assessed against Curtis Enterprises.  In such circumstance, the Primary Policy calls for MLMIC to provide a defense in connection with this potential coverage.

The Court denies MLMIC's motion for summary judgment on the issues regarding whether MLMIC has a duty to defend or to indemnify Curtis Enterprises, either as an "other insured" or because of Evergreene's contractual assumption of liability.  It is also premature to hold that coverage exists, because it depends on the outcome of the Underlying Lawsuit. Accordingly, Curtis Enterprises' motion regarding indemnity is likewise denied.   However, Curtis Enterprises' motion requesting a defense is granted.

### (3)      Recovery of Punitive Damages

MLMIC contends that it is entitled to a declaration that it has no duty to indemnify the Defendants "for intentional conduct that could give rise to punitive damages."  (Pl.'s brief at p. 13).  For cause, MLMIC argues that the public policy of Arkansas prohibits relieving insureds from the consequences of their intentional or willful misconduct.

It seems unlikely that punitive damages will be awarded on the breach of contract claim, the only claim in the Underlying Lawsuit for which potential coverage exists.  Generally,

punitive damages are not recoverable in a breach of contract action.  *See Hall v. Modern Woodmen of America*, 882 F.Supp. 830, 833 (E.D. Ark. 1994).  However, exceptions to this general rule have been recognized.  For example, punitive damages may be awarded in a contract action when a malicious or willful act accompanies the breach.  HOWARD BRILL, LAW OF DAMAGES p. 115 (Fifth Ed. 2004).  The Underlying Lawsuit also includes tort allegations for which punitive damages might be available, and this arguably increases the odds that the breach of contract claim might be the rare instance in which punitive damages are appropriate.  Also, as Professor Brill observed, the trend outside Arkansas is "to abandon or weaken the rule that punitive damages are not available in breach of contract actions."  *Id*.  Accordingly, the Court will address the punitive damages issue.

The Primary Policy does not exclude punitive damages.  In connection with the Professional Liability provisions, MLMIC agreed to pay damages for "the providing or failure to provide professional services" and it defines the accompanying occurrence coverage to cover "claims arising from incidents that occur while the policy is in effect."  (Ex. 1, at Bates No. 00004-05).

Coverage B of the Supercover Policy specifically excludes punitive damages.  (Supercover Policy, Exh. 2 at Bates No. 00025).  Coverage A does not.  Also, Coverage B of the Supercover Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Supercover Policy, Exh. 2 at (*Id*. at 00023).  Coverage B's definition of "occurrence" is significantly narrower than the definition of "occurrence" used in the Primary Policy and in Coverage A of the Supercover Policy.  The Primary Policy, by defining "occurrence" in terms of an "incident" rather than an

accident appears to leave open the possibility of coverage for an award of punitive damages.

In essence, MLMIC failed to exclude punitive damages from its Primary Policy and Coverage A of the Supercover Policy, but it now seeks to have this Court invoke public policy to override the express terms of the insurance policy.  The Court declines to do so.  This Court is unaware of any situation in which Arkansas courts have invalidated on public policy grounds any grant of coverage included in an insurance policy.

MLMIC's reliance on *Southern Farm Bureau Cas. Ins. Co. v. Daniel*, 246 Ark. 849, 440 S.W.2d 582 (1969), is misplaced.  In *Southern Bureau*, the Arkansas Supreme Court considered the issue of whether punitive damages arising out of an automobile accident were recoverable under the insured's automobile liability policy.  Southern Bureau had agreed to pay "all sums which the insured shall become LEGALLY OBLIGATED TO PAY AS DAMAGES."  *Id.*, at 852, 440 S.W.2d at 584 (emphasis in original).   The *Southern Bureau* court held that punitive damages were recoverable under the policy, and commented that it could find  nothing in the state's public policy "that prevents an insurer from indemnifying its insured against punitive damages arising out of an accident, as distinguished from intentional torts."  *Id.*   MLMIC relies on the last phrase of this comment from *Southern Bureau* – "as distinguished from intentional torts" –  to suggest that Arkansas public policy does not permit indemnification for punitive damages for intentional torts.

The Court concludes that this statement was *dicta*, as the *Southern Bureau* case did not involve an intentional tort, but rather an automobile accident and the policy in question was limited to injury caused by accident.  More importantly, MLMIC ignores the remainder of the same paragraph, which reads:

> Since we have permitted punitive damages to be assessed against an employer under the doctrine of respondeat superior even in the absence of the employer's knowledge or authorization of the employee's acts, we can perceive of no good reason why an employer should be prohibited from insuring himself against such losses, since the losses are in effect a business loss – i.e., a calculated risk of doing business.

*Id*.

Nursing homes in Arkansas certainly face the prospect of losses caused by lawsuits, and such losses include awards of punitive damages. The Court agrees with *Southern Bureau*. Businesses should be permitted to insure against known risks. Insurance companies can elect not to write coverage for punitive damages if they so choose. Instead, MLMIC agreed to pay "those sums which [the insured] and others covered . . . are legally required to pay as damages . . .because of injury that results from the providing or failure to provide professional services." (Primary Policy, Exh. 1, at Bates No. 00021). The *Southern Bureau* court, noting that punitive damages could not be awarded unless actual damages were sustained and assessed, concluded that punitive damages constituted "a sum which the insured" was "legally obligated to pay as damages because of bodily injuries sustained." *Southern Bureau, supra*, 246 Ark. at 852, 440 S.W.2d at 584. Similarly, here, an award of punitive damages might be considered a sum that the insured is legally required to pay as damages because of injury resulting from the providing or failure to provide professional services.

While there are jurisdictions which hold that any insurance for punitive damages is void because against public policy, Arkansas does not appear to be one of those jurisdictions, and it arguably should be counted as a jurisdiction which does not bar an award of punitive damages,

also on public policy grounds.[8]   Moreover, even those jurisdictions that do not permit the

recovery of insurance for punitive damages recognize that the prohibition does not apply when

the insured did not personally commit the conduct giving rise to punitive damages.[9]   Such an

exception might well apply here – where the Defendants may be called upon to pay punitive

damages for the conduct of others.

The greater risk to good public policy – in this Court's opinion – is for insurance

companies to issue policies which appear to provide coverage for punitive damages, and then call

upon the courts to rewrite the policy to eliminate coverage for which the insured contracted, paid

and relied upon.

The Court rejects all of the arguments put forth by MLMIC to justify the Court rewriting

the Primary Policy and Coverage A of the Supercover Policy to exclude coverage for punitive

damages.   At this point, it can not be determined whether an award of punitive damages in the

Underlying Lawsuit might or might not fall within the Policies' coverage, and it is premature to

consider the issue further.

---

[8]  Cases prohibiting coverage for punitive damages include:  *Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1502 (10th Cir. 1994)(Oklahoma law); *Hartford Cas.Ins. Co. v. Powell*, 19 F.Supp. 2d 678, 685 (N.D. Tex. 1998); *Hartford Accident & Indem. Co. v. American Red Ball Transit Co.*, 262 Kan. 570 586, 938 P.2d 1281, 1293 (1997).  Cases permitting coverage for punitive damages, also on policy grounds, include: *Meijer, Inc. v. General Star Indem. Co.*, 826 F.Supp. 241, 247 (W.D. Mich. 1993)(illusory coverage); *Jones v. State Farm Mut. Auto. Ins. Co.*, 610 S.2d 1352, 1354 (Del. 1992)(compensation of innocent victims); *The Corinthian v.  Hartford Fire Ins. Co.*, 143 Ohio App. 3d 392, 397, 758 N.E.2d 218, 222 (2001)(freedom to contract).

[9]  *U.S. Fid. & Guar. Co. v. Open Sesame Child Care Ctr.*, 819 F.Supp. 756, 761 (N.D. Ill. 1993).

**(4)**      **Recovery of Defense Costs**

MLMIC is presently providing a defense for Evergreene and Curtis Enterprises in the

Underlying Lawsuit on the breach of contract claim. The Court does not know for certain

whether MLMIC is providing a defense to all claims, but there is authority for the proposition

that it should.

Generally, an insurer's duty to defend, if triggered as to one claim asserted against the

insured, obligates the insurer to provide a defense as to the entire action, even though other

claims are clearly outside the scope of coverage.[10]   The rationale for the rule is that it  "assures

that the insured will have a coherent, coordinated defense aimed at defeating all of the claims,

rather than separate defenses that might work at cross purposes." *First Newton Nat'l Bank v.*

*General Cas. Co. of Wisconsin,* 426 N.W.2d 618, 630 (Iowa 1988).   This Court knows of no

Arkansas case (and none has been cited) addressing the issue.  The Court predicts that the

Arkansas Supreme Court would apply the majority rule and hold that when an action against an

insured involves both covered and noncovered claims, the insurer has a duty to defend the entire

action.

The parties have not focused on this particular issue.  The Court brings it up because it

has potential relevance to the Court's consideration of whether MLMIC is entitled to recover its

defense costs.  With the Court's holding that there is no potential coverage for the tort based

claims, but potential coverage for the breach of contract claim, the defense that MLMIC is

providing in the Underlying Lawsuit – assuming it is a complete defense – becomes what other

---

[10]  *See, e.g.*, *Allegations in Third Person's Action Against Insured as Determining*
*Liability Insurer's Duty to Defend*, 50 A.L.R.2d 458 at § 24(a) (citing numerous cases for
proposition).

courts refer to as a "mixed" case.  This has implications for the recovery of defense costs, for the reasons discussed below.

While it is providing a defense, MLMIC is simultaneously requesting that this Court hold that it has the right to recover its defense costs.[11]  For cause, MLMIC cites *Nobel Insurance Company v. Austin Powder Co.*, 256 F.Supp. 937 (W.D. Ark. 2003) for the proposition that an insurance company may seek reimbursement for its costs in settling and defending an action.  In *Nobel*, the commercial general liability (CGL) insurer filed a declaratory judgment action seeking to recover from its insured both the sums it expended in defending and in settling the claims.  The insurer had assumed the defense under a full reservation of rights.  It later settled the action for $650,000, and sought contribution from the insured.  In *Nobel*, the district court focused on the insurer's failure to provide clear notice to the insured of its "intent to seek reimbursement for defense costs in clear and unambiguous language."  *Id.*, at 940.

*Nobel* did not concern the issue of whether an insurer may ever recover the costs of defending an insured when coverage is found to be lacking on certain claims, absent a settlement.  And, even on the issue addressed, the Nobel court noted that "there is no controlling precedent on the issue."  *Id*.  *Nobel* does not resolve the issue presented here.

This Court questions whether the Arkansas Supreme Court would permit an insurer to provide a defense and thereafter to seek reimbursement of the costs of such defense from the insured (with or without a settlement).  Moreover, even if Arkansas law were construed to permit

---

[11]  Neither party mentioned the conflict of interest created by MLMIC's providing of a defense under a reservation of rights and while attempting to recoup defense costs.  In *Union Ins. Co. v. Knife Co., Inc.*, 902 F.Supp. 877 (WD Ark. 1995), Judge Waters held that the insurer's reservation of rights created a conflict of interest situation and created a right on behalf of the insured to name independent counsel of its own choosing.

the recovery of defense costs, the circumstances in which such reimbursement would be permitted or not permitted would have to be defined.  This particular issue has not yet been addressed by any Arkansas court.  Other states have, however, grappled with the issue, and they have reached different conclusions.

The Wyoming Supreme Court, in *Shoshone First Bank v. Pacific Employers Ins. Co.*, 2 P.3d 510, 514 (Wyo. 2000), held that an insurer is liable for all of the costs of defending an action – including both covered and uncovered claims – unless an agreement to the contrary is found in the policy.  The *Shoshon*e court specifically rejected the contention that the insurance contract could be amended or altered by a reservation of rights letter.

Other courts take a more expansive view of an insurer's right to recover defense costs.  In *Buss v. Superior Court*, 16 Cal. 4th 35, 65 Cal.Rptr.2d 36, 939 P.2d 766 (1997), the California Supreme Court held that in a "mixed" action – that is – an action in which some claims are potentially covered but others are not – the insurer may not seek reimbursement for defense costs for the potentially covered claims, but it may seek reimbursement for the claims for which there is no potential coverage.  In seeking to recover defense costs, however, the insurer has the burden of proof and may only recover those defense costs that may be allocated solely to the non-covered claims.  *Id.*, 16 Cal 4th at 53, 939 P.3d at 778.   In *Buss*, the insurer had specifically reserved the right, "'[w]ith respect to defense costs incurred or to be incurred in the future, . . . to be reimbursed and/or [to obtain] an allocation of attorney's fees and expenses in this action if it is determined that there is no coverage. . . .'" *Id.*,  16 Cal. 4th at 42, 939 P.3d at 770.

Neither party has cited to *Buss, Shoshone*, or any of the other cases from those jurisdictions which have addressed the threshold issue of an insurer's right to recover defense

costs.   In fact, Plaintiff MLMIC's brief in support of its motion for summary judgment does not

even discuss (much less brief) the recoupment of defense costs issue.  It simply requests such

relief in its conclusory paragraph.

In this case, the Primary Policy informs the insured that a defense will be provided and

nowhere does it state or imply that the insurer will provide a defense but later seek to recoup its

defense costs from the insured.  On this issue, the Policy provides in pertinent part:

**2.      WHAT WE WILL DEFEND**

> We will defend any claim brought against you and others covered
> under this policy seeking damages that are covered under any
> section of this policy.  We will do this even if the allegations of the
> claim are groundless, false or fraudulent.

(Policy, Exh. 1 at Bates 00015).  The Policy further provides that the costs incurred to defend a

claim under the specified Commercial General Liability coverage are <u>in addition to</u>  the limits of

coverage.  *Id*.

Elsewhere in the Policy, the insured is informed in a section entitled "HOW YOU WILL

PAY A SHARE OF SETTLEMENTS OR JUDGMENTS" of the requirement that the insured is

"required to bear a share of settlements we [the insurer] makes or judgments that are rendered

against you or any covered person."  That share is specifically limited, however, to "the

deductible shown in the Declarations" and the deductible "does not apply to defense costs."

(Policy, Exh. 1 at Bates No. 00019).

MLMIC first suggested that it reserved the right to recover its defense costs in its June 27,

2005, letter advising of its defense and coverage positions.  In that letter, MLMIC advises that

even though it believes that potential coverage exists for only one of the claims alleged, it "will

provide a defense, under protest, for all claims within the limits of the policies." (Letter, Exh. 6 to Def.'s motion at Bates No. 01683). The Letter lacks any notice that the MLMIC intends to attempt to recover its defense costs. This letter is inadequate to reserve the right to seek reimbursement for defense costs, even assuming such a right exists in Arkansas.

In responding to Defendant's motion for summary judgment, Plaintiff MLMIC for the first time produced a second letter, this one dated January 31, 2006, in further support of its effort to recover defense costs. In that letter, a Senior Claims Examiner for MLMIC advises Keith Billingsley, the attorney of record for Defendants in this action, and Daniel Green, President of Evergreene that it may "recoup and seek reimbursement from Evergreene for any and all costs and expenses that FFIC [MLMIC] insures in providing a defense to Evergreene in the Lawsuit." The letter further states that: "In the event that it is determined that FFIC [MLMIC] does not have a duty under the FFIC Policies to defend or indemnify Evergreene in the Lawsuit, and the Lawsuit is settled, FFIC reserves the right to recoup and seek reimbursement from Evergreene for any and all costs and expenses associated with the settlement, including the settlement amount." (Letter dated January 31, 2006, Exh. A to Pl.'s Response to Summary Judgment).

The Defendants point out that the January 31st letter was sent several months after this declaratory judgment motion was filed on September 21, 2005. Moreover, MLMIC sent this letter approximately one year after the Underlying Lawsuit was filed on January 28, 2005, and six months after its June 27th letter agreeing to provide a defense.

In *Nobel*, the Court held that the insurer's notice of intent to seek reimbursement, provided in a letter received by the insured <u>after</u> the insurer already settled the action, was untimely. *Nobel, supra*, at 940-41. MLMIC's letter is problematic for two reasons. First, it

arguably fails to notify the insured in the required clear and unambiguous terms of its intent to seek reimbursement of defense costs where it has a duty to defend the lawsuit and in the absence of a settlement.  Second, the notice in the letter is untimely.

The Court's finding that MLMIC has failed to provide timely and adequate notice of its intent to seek reimbursement of defense costs absent a settlement makes it unnecessary to address the more fundamental issue of whether Arkansas would even permit the recovery of defense costs by an insurer under policies such as we have here, and if so, the circumstances in which the recovery of such costs would and would not be permitted.  That issue remains for another day.

The Court rejects MLMIC's contention in its summary judgment motion that it is entitled to recoup the cost of the defense provided to the Defendants in the Underlying Lawsuit.

**(5)    Ripeness**

It appears to this Court that all declaratory judgment issues which may be properly resolved prior to the resolution of the Underlying Lawsuit have been resolved.  When coverage questions turn on the resolution of factual issues to be presented in the underlying litigation, considerations of "practicality and wise judicial administration" counsel against proceeding with the declaratory judgment case "in order to avoid duplicative proceedings, to preserve the insured's prerogative to select the forum and to avoid the risk of inconsistent judgments." *Aetna Cas. & Sur. Co. v.  Kelly*, 889 F.Supp. 535, 540 (D.R.I. 1995)(citation omitted).

If the parties disagree, then they shall so notify the Court in writing, identifying with specificity any issues which they contend may and should be resolved without waiting on the resolution of the state court case.  The parties are further directed to indicate whether they oppose

a stay of this action pending resolution of the Underlying Lawsuit.  The Court proposes to effect

a stay by entering an Order of Administrative Termination, which shall provide that any party

shall have the right to reopen the case within ninety (90) days of the resolution of the Underlying

Lawsuit in the Phillips County Circuit Court.

## CONCLUSION

For the reasons herein stated,

IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment (Docket

No. 37) be, and it is hereby, GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED THAT Plaintiff Medical Liability Mutual Insurance

Company's Motion for Partial Summary Judgment (Docket No. 41) be, and it is hereby,

GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED THAT Defendants' Motion to Strike Testimony (Docket

No. 60) be, and it is hereby, DENIED as MOOT in light of the removal of this case from the trial

calendar.  If it later becomes necessary to address this issue, Defendants may renew the motion

and it will be addressed at that time.

IT IS FURTHER ORDERED, on the Court's own motion, that the parties shall respond

by December 20, 2006, to the Court's inquiry regarding whether it is appropriate to consider any

other issues at this time and whether this action should be stayed pending resolution of the

Underlying Lawsuit.

Dated this   8th   day of December, 2006.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE